**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERY B. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:06-cv-00178-MEF-DRB** |
| | ) | |
| **JURISDICTION SYSTEM, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Sheriff Jay Jones, Major Cary Torbert, Jr., Lieutenant Corey Welch, Sergeant Rodney Tabb, Nurse Linda Stewart, and Nurse Kelley Griffith, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On March 7, 2006, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama against Defendants "Jurisdiction System," Sheriff Jay Jones, Major Cary Torbert, Jr., Lieutenant Corey Welch, Sergeant Rodney Tabb, Nurse Linda Stewart, and Nurse Kelley Griffith.  On May 10, 2006, this Court ordered Defendants to file a Special Report and Answer by June 19, 2006.  On May 30, 2006, this Court dismissed the Defendant designated as the "Jurisdiction System" with prejudice prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Plaintiff was arrested on January 28, 2006 on charges of driving while under the influence, driving with a suspended license, open container, speeding, and possession of drug paraphernalia.  (Exhibit A, Inmate File of Jeffery Bernard Jones,[1] "Inmate File," Inmate Booking Sheet dated January 28, 2006.)  On March 16, 2006, the Plaintiff was committed to the custody

---

[1] See Exhibit C, Affidavit of Cary Torbert, Jr., "Torbert aff.," ¶ 43 for certification of Plaintiff's Inmate File.

of the Sheriff of Lee County, Alabama, for 365 days for the charge of driving while under the influence, 180 days for driving with a suspended license, and 10 days for speeding.  (Ex. A, Inmate File, Inmate Booking Sheet, Committal to Custody dated March 16, 2006.)

## PLAINTIFF'S ALLEGATIONS

The Defendants have attempted to ascertain the claims made by the Plaintiff and have determined that the Plaintiff alleges the following:  (1) that he did not go to court for two months; (2) that he has not received answers to requests – if you write ten requests, they answer one; (3) that he has not had visitation; (4) that he has not been provided with reading glasses; (5) that "[t]hey wait 30 days before taking T.B. test"; (6) that there is no milk, juice, or coffee; (7) that there are more inmates than there are beds; (8) that he has to pay co-payments for medical care; and (9) that Sergeant Tabb did not give him Kenith Brown's store order.  (See Plaintiff's Complaint, pp. 2-6.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the material allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Exhibit B, Affidavit of Sheriff Jay Jones,[2] "Jones aff.," ¶ 4; Exhibit C, Affidavit of Major Cary Torbert, Jr.,[3] "Torbert aff.," ¶ 4; Exhibit D, Affidavit of Lieutenant Corey Welch,[4] "Welch aff.," ¶ 4;

---

[2] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.  (Ex. B, Jones aff., ¶ 2.)

[3] Cary Torbert, Jr., serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major.  Major Torbert has worked with the Lee County Sheriff's Office for over 32 years.  (Ex. C, Torbert aff., ¶ 2.)

[4] Corey Welch is employed by the Lee County Sheriff's Office and is assigned to serve as a Corrections Officer at the Lee County Detention Facility.  Lieutenant Welch has worked as a correctional officer for over ten years, having obtained the rank of Lieutenant in November 2004.  Lieutenant Welch is both a graduate of the Police Academy and the Alabama Jail Management School.  (Ex. D, Welch aff., ¶ 2.)

Exhibit E, Affidavit of Sergeant Rodney D. Tabb,[5] "Tabb aff.," ¶ 4; Exhibit F, Affidavit[6] of Nurse Linda Stewart,[7] "Stewart aff.," ¶ 4; Exhibit G, Affidavit[8] of Nurse Kelley Griffith,[9] "Griffith aff.," ¶ 4.)  Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, absence of physical injury, quasi-judicial immunity, lack of standing, and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility.  As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility.  (Ex. B, Jones aff., ¶ 5.)  The Defendants have complied with all policies and procedures of the Lee County Detention Facility.

---

[5] Rodney D. Tabb is employed by the Lee County Sheriff's Office and assigned to serve as a Corrections Officer at the Lee County Detention Facility.  Tabb has worked as a correctional officer for over fourteen years and has obtained the rank of Sergeant.  Currently, Sergeant Tabb is the canteen manager and is, therefore, in charge of all inmate accounts.  Sergeant Tabb is responsible for all monies going into and out of inmate accounts for medical services, canteen orders and other circumstances involving inmate money.  (Ex. E, Tabb aff., ¶ 2.)

[6] Attached hereto is the unsigned affidavit of Nurse Linda Stewart.  Nurse Stewart has reviewed the affidavit and indicated her approval of its contents.  The Defendants will supplement their Special Report with the signed and executed affidavit of Nurse Stewart upon Defense Counsel's receipt of document.

[7] Nurse Linda Stewart has been employed as a Nurse with the Lee County Detention Facility for over five years.  Nurse Stewart is a Licensed Practical Nurse (LPN) and has been licensed for over twenty years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen years.  Nurse Stewart taught Nursing Assistance Clinicals for two years at Career Institute.  She collected medical information for the law firm of Bellamy and Jones for three years, and she was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve years, prior to her coming to the Lee County Detention Facility.  (Ex. F, Stewart aff., ¶ 2.)

[8] Attached hereto is the unsigned affidavit of Nurse Kelley Hendricks Griffith.  Nurse Griffith has reviewed the affidavit and indicated her approval of its contents.  The Defendants will supplement their Special Report with the signed and executed affidavit of Nurse Griffith upon Defense Counsel's receipt of document.

[9] Nurse Kelley Hendricks Griffith is a Licensed Practical Nurse (LPN).  Nurse Griffith has been employed by the Lee County Sheriff's Office and assigned to the Lee County Detention Facility since February 2006.  Prior to her employment at the Sheriff's Office, Nurse Griffith was employed as an LPN at Kilby Correctional Facility for six months.  She earned her LPN degree from Southern Union in August 1998.  Since earning this degree, in addition to her experience in jail/prison settings, Nurse Griffith has been employed by Lanier Health Services Hospital where she was assigned to the Medical/Surgical Floor.  Nurse Griffith also served as an LPN in the Army Outpatient Medical Clinic for two years.  She worked for three years at the Lake Martin Community Hospital in the Emergency Room, Medical/Surgical Floor, and Outpatient Floor.  Nurse Griffith has also been employed to manage the office of Robert Bartel, MD, and has worked at the Tallassee Community Hospital.  (Ex. G, Griffith aff., ¶ 2.)

The Defendants are not aware of, nor have they authorized or allowed, any deviation from said policies and procedures.  (Ex. B, Jones aff., ¶ 42; Ex. C, Torbert aff., ¶ 42; Ex. D, Welch aff., ¶ 41; Ex. E, Tabb aff., ¶ 42; Ex. F, Stewart aff., ¶ 23; Ex. G, Griffith aff., ¶ 26.)

It is the policy of the Lee County Sheriff's Office that members of the Detention Facility staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or Detention Facility personnel.  All properly submitted nonmedical request forms are answered, and a copy is placed in the inmate's inmate file.  (Ex. B, Jones aff., ¶ 28; Ex. C, Torbert aff., ¶ 28; Ex. D, Welch aff., ¶ 28; Ex. E, Tabb aff., ¶ 27.)  All medical request forms are forwarded to the medical staff to be answered.  (Ex. B, Jones aff., ¶ 28; Ex. C, Torbert aff., ¶ 28; Ex. D, Welch aff., ¶ 28; Ex. E, Tabb aff., ¶ 28; Ex. G, Griffith aff., ¶ 22.)  A copy of the answered medical request form is filed in that inmate's medical file.  (Ex. B, Jones aff., ¶ 28; Ex. C, Torbert aff., ¶ 28; Ex. G, Griffith aff., ¶ 22.)

The Plaintiff was aware of the request procedure as evidenced by the request forms he filed that were answered and are present in his inmate file and inmate medical file.  (Ex. C, Torbert aff., ¶ 28; Ex. G, Griffith aff., ¶ 22; Exhibit H, Inmate File, Inmate Request Slip dated February 13, 2006; Exhibit I, Inmate File, Inmate Request Slip dated February 15, 2006; Exhibit L, Inmate Medical File of Jeffery Bernard Jones,[10] "Medical File," Inmate Request Slip dated February 4, 2006; Exhibit M, Medical File, Inmate Request Slip dated February 9, 2006; Exhibit N, Medical File, Inmate Request Slip dated March 18, 2006.)  At the time of the filing of the Plaintiff's Complaint, he had filed two nonmedical request slips and three medical request slips. (Ex. C, Torbert aff., ¶ 30; Ex. G, Griffith aff., ¶ 22; Ex. H; Ex. I; Ex. L, Medical File, Inmate Request Slip dated February 4, 2006; Ex. M, Medical File, Inmate Request Slip dated February 9, 2006; Ex. N, Medical File, Inmate Request Slip dated March 18, 2006.)  The nonmedical

---

[10] See Ex. F, Stewart aff., ¶ 24 for certification of Plaintiff's Inmate Medical File.

request slips were answered, and copies of the forms are present in his inmate file. (Ex. C, Torbert aff., ¶ 28; Ex. H, Ex. I.) The medical request slips were answered, and copies of the forms are present in his inmate medical file. (Ex. G, Griffith aff., ¶ 22; Exs. L-N.)

Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form. An exception exists for requests of an emergency nature which will be handled immediately without a written request. Inmates housed in the Lee County Detention Facility are furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing. Detention Facility personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day. (Ex. B, Jones aff., ¶ 30; Ex. C, Torbert aff., ¶ 29; Ex. D, Welch aff., ¶ 29; Ex. E, Tabb aff., ¶ 29.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Ex. B, Jones aff., ¶ 38; Ex. C, Torbert aff., ¶ 38; Ex. D, Welch aff., ¶ 37; Ex. E, Tabb aff., ¶ 38.) All inmates are provided access to a Lee County Detention Center Inmate Handbook. A copy of this handbook is placed in each cellblock for inmates to review whenever they wish. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the

5

inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Ex. B, Jones aff., ¶ 39; Ex. C, Torbert aff., ¶ 39; Ex. D, Welch aff., ¶ 38; Ex. E, Tabb aff., ¶ 39.) None of the Defendants have ever received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint except that the Plaintiff wrote a grievance regarding his eyes. (Ex. B, Jones aff., ¶ 40; Ex. C, Torbert aff., ¶ 40; Ex. D, Welch aff., ¶ 39; Ex. E, Tabb aff., ¶ 40; Ex. F, Stewart aff., ¶ 25; Ex. G, Griffith aff., ¶ 24; Ex. N, Medical File, Inmate Request Slip dated March 18, 2006.) Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to Major Torbert or Sheriff Jay Jones. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Facility. (Ex. B, Jones aff., ¶ 40; Ex. C, Torbert aff., ¶ 40.)

All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file. (Ex. B, Jones aff., ¶ 41; Ex. C, Torbert aff., ¶ 41; Ex. D, Welch aff., ¶ 40; Ex. E, Tabb aff., ¶ 41.) Upon the Jail Administrator's review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his Complaint.[11] (Ex. C, Torbert aff., ¶ 41; Ex. A; Ex. H, Ex. I, Exhibit J, Inmate File.[12])

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Facility to request health care services at any time. (Ex. B, Jones aff., ¶ 17; Ex. C, Torbert aff., ¶ 16; Ex. D, Welch aff., ¶ 16; Ex. E, Tabb aff., ¶ 16; Ex. F, Stewart aff., ¶ 10; Ex. G, Griffith aff., ¶ 10.) Two methods may be utilized by inmates incarcerated in the Lee County Detention Facility in order to secure health care services: a) Verbal Request: An inmate

---

[11] The previously referenced medical grievance is a part of the Plaintiff's Inmate Medical File.
[12] The remainder of the Plaintiff's Inmate File, not previously referenced as separate Exhibits, is attached hereto as Exhibit J.

may make a verbal request for emergency medical attention to any member of the Detention Facility staff at any time; b) Written Request:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Facility staff.  (Ex. B, Jones aff., ¶ 18; Ex. C, Torbert aff., ¶ 17; Ex. D, Welch aff., ¶ 17; Ex. E, Tabb aff., ¶ 17; Ex. F, Stewart aff., ¶ 11; Ex. G, Griffith aff., ¶ 11.)  Requests for medical treatment will be accepted by members of the Detention Facility staff at any time.  (Ex. B, Jones aff., ¶ 19; Ex. C, Torbert aff., ¶ 18; Ex. D, Welch aff., ¶ 18; Ex. E, Tabb aff., ¶ 18; Ex. F, Stewart aff., ¶ 12; Ex. G, Griffith aff., ¶ 12.)  When a request for medical treatment is made to a member of the Detention Facility staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request.  It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered. (Ex. B, Jones aff., ¶ 20; Ex. C, Torbert aff., ¶ 19; Ex. D, Welch aff., ¶ 19; Ex. E, Tabb aff., ¶ 19; Ex. F, Stewart aff., ¶ 13; Ex. G, Griffith aff., ¶ 13.)  Medical requests of an emergency nature are to be handled immediately.  (Ex. B, Jones aff., ¶ 21; Ex. C, Torbert aff., ¶ 20; Ex. D, Welch aff., ¶ 20; Ex. E, Tabb aff., ¶ 20; Ex. F, Stewart aff., ¶ 14; Ex. G, Griffith aff., ¶ 14.)

As part of the booking process, inmates are informed of the methods by which they may obtain medical treatment.  (Ex. B, Jones aff., ¶ 22; Ex. C, Torbert aff., ¶ 21; Ex. D, Welch aff., ¶ 21; Ex. E, Tabb aff., ¶ 21; Ex. F, Stewart aff., ¶ 15; Ex. G, Griffith aff., ¶ 15.)  The Detention Facility nurses, under the direction of the Detention Facility Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Facility.  (Ex. B, Jones aff., ¶ 23; Ex. C, Torbert aff., ¶ 22; Ex. D, Welch aff., ¶ 22; Ex. E, Tabb aff., ¶ 22; Ex. F, Stewart aff., ¶ 16; Ex. G, Griffith aff., ¶ 16.)

All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Facility official. Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate. (Ex. B, Jones aff., ¶ 24; Ex. C, Torbert aff., ¶ 23; Ex. D, Welch aff., ¶ 23; Ex. E, Tabb aff., ¶ 23; Ex. F, Stewart aff., ¶ 17; Ex. G, Griffith aff., ¶ 17.) Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates. All inmates are required to pay a $10.00 fee for non-emergency treatment and a $3.00 fee for prescription medication. Inmates will not be denied medical treatment because of lack of funds or for any other reason. When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received. (Ex. B, Jones aff., ¶ 25; Ex. C, Torbert aff., ¶ 24; Ex. D, Welch aff., ¶ 24; Ex. E, Tabb aff., ¶ 24; Ex. F, Stewart aff., ¶ 18; Ex. G, Griffith aff., ¶ 18.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotional well-being. (Ex. B, Jones aff., ¶ 12; Ex. C, Torbert aff., ¶ 11; Ex. D, Welch aff., ¶ 11; Ex. E, Tabb aff., ¶ 11; Ex. F, Stewart aff., ¶ 5; Ex. G, Griffith aff., ¶ 5.) Medical care rendered to inmates in the Lee County Detention Facility is delivered under the direction of a licensed health care provider. (Ex. B, Jones aff., ¶ 13; Ex. C, Torbert aff., ¶ 12; Ex. D, Welch aff., ¶ 12; Ex. E, Tabb aff., ¶ 12; Ex. F, Stewart aff., ¶ 6; Ex. G, Griffith aff., ¶ 6.) No health care personnel, Detention Facility officer, or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. (Ex. B, Jones aff., ¶ 14; Ex. C, Torbert aff., ¶ 13; Ex. D, Welch aff., ¶ 13; Ex. E, Tabb aff., ¶ 13; Ex. F, Stewart aff., ¶ 7; Ex. G, Griffith aff., ¶ 7.) Medical, dental, and mental health matters involving clinical judgments are the sole province of the

responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.  (Ex. B, Jones aff., ¶ 15; Ex. C, Torbert aff., ¶ 14; Ex. D, Welch aff., ¶ 14; Ex. E, Tabb aff., ¶ 14; Ex. F, Stewart aff., ¶ 8; Ex. G, Griffith aff., ¶ 8.)  Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Ex. B, Jones aff., ¶ 16; Ex. C, Torbert aff., ¶ 15; Ex. D, Welch aff., ¶ 15; Ex. E, Tabb aff., ¶ 15; Ex. F, Stewart aff., ¶ 9; Ex. G, Griffith aff., ¶ 9.)  Per the policy of the Lee County Sheriff's Office, the nonmedical Defendants always defer to the instructions of the trained medical professionals on all medical issues.  (Ex. B, Jones aff., ¶ 26; Ex. C, Torbert aff., ¶ 25; Ex. D, Welch aff., ¶ 25; Ex. E, Tabb aff., ¶ 25.)  Nurse Stewart and Nurse Griffith follow the instructions of Dr. McFarland on all medical issues.  (Ex. F, Stewart aff., ¶ 19; Ex. G, Griffith aff., ¶ 19.)

Inmates are allowed to have reading glasses while incarcerated at the Lee County Detention Facility.  However, the Sheriff's Office does not purchase reading glasses for inmates.  (Ex. B, Jones aff., ¶ 27; Ex. C, Torbert aff., ¶ 26; Ex. D, Welch aff., ¶ 26; Ex. E, Tabb aff., ¶ 26; Ex. F, Stewart aff., ¶ 20; Ex. G, Griffith aff., ¶ 20.)  All inmates sentenced to over 90 days are given a screening for Tuberculosis. (Ex. B, Jones aff., ¶ 28; Ex. C, Torbert aff., ¶ 27; Ex. D, Welch aff., ¶ 27; Ex. E, Tabb aff., ¶ 27; Ex. F, Stewart aff., ¶ 21; Ex. G, Griffith aff., ¶ 21.)

The Plaintiff's medical records show that he made a request on February 4, 2006, stating that he needed glasses and that he was having headaches.  (Ex. G, Griffith aff., ¶ 23; Ex. L.)  Nurse Griffith noted that his request was addressed in sick call and that his family should bring him some reading glasses.  (Ex. G, Griffith aff., ¶ 23; Ex. L.)  Nurse Griffith gave the Plaintiff 500 milligram Tylenol.  (Ex. G, Griffith aff., ¶ 23; Exhibit O, Medical File, Notes dated February 7, 2006.)  The records show that the Plaintiff was given Tylenol for headaches upon his requests and that Dr. McFarland prescribed Tylenol or Motrin as needed for the Plaintiff.  (Ex. G, Griffith aff., ¶ 23; Ex. M; Ex. O; Exhibit P, Medical File, Notes dated March 21, 2006.)

As Detention Facility Nurses, Nurse Stewart and Nurse Griffith have neither duty nor authority with regard to any nonmedical issues. (Ex. B, Jones aff., ¶ 43; Ex. C, Torbert aff., ¶ 43; Ex. F, Stewart aff., ¶ 23; Ex. G, Griffith aff., ¶ 23.)

It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Facility have access to the courts, attorneys, and their authorized representatives. (Ex. B, Jones aff., ¶ 6; Ex. C, Torbert aff., ¶ 5; Ex. D, Welch aff., ¶ 5; Ex. E, Tabb aff., ¶ 5.) Persons incarcerated in the Lee County Detention Facility may have access to the Lee County Detention Center Law Library after submitting a written request to the Chief Deputy Sheriff, Captain, Lieutenant, or Shift Supervisor.  (Ex. B, Jones aff., ¶ 7; Ex. C, Torbert aff., ¶ 6; Ex. D, Welch aff., ¶ 6; Ex. E, Tabb aff., ¶ 6.)  The Plaintiff's inmate file shows that he has been given access to the law library upon his request.  (Ex. C, Torbert aff., ¶ 6; Ex. H.)  The Defendants in this action have neither duty nor authority with regard to when an inmate goes to Court.  The Lee County Sheriff's Office is responsible for submitting the inmate's arrest report to the Court, which was done in this case.  The judge assigned to that inmate's case sets that inmate's Court date, and the Lee County Sheriff's Office employees simply ensure that the inmate is present at the ordered time.   At all times, the Plaintiff has been transported to his scheduled court appearances. (Ex. B, Jones aff., ¶ 8; Ex. C, Torbert aff., ¶ 7; Ex. D, Welch aff., ¶ 7; Ex. E, Tabb aff., ¶ 7.)

Inmates are to be given access to the telephones in the dayroom each day from 7:00 a.m. until 9:00 p.m.   Telephone privileges are also extended to persons not incarcerated in the dayroom area of the Detention Facility on a regular basis, at least four hours per day between 7:00 a.m. and 9:00 p.m.  (Ex. B, Jones aff., ¶ 9; Ex. C, Torbert aff., ¶ 8; Ex. D, Welch aff., ¶ 8; Ex. E, Tabb aff., ¶ 8.)   Inmates are entitled to privileged visits at any reasonable time with their

attorneys or other legal official. (Ex. B, Jones aff., ¶ 10; Ex. C, Torbert aff., ¶ 9; Ex. D, Welch aff., ¶ 9; Ex. E, Tabb aff., ¶ 9.)

Further, it is the policy of the Lee County Sheriff's Office to extend the privilege of visitation from family and friends to persons incarcerated in the Lee County Detention Facility. Inmates are allowed visitation with friends or family on Saturday or Sunday for thirty minutes. Inmates are allowed to fill out a visitation form and list the names of four individuals from whom they will accept visits. (Ex. B, Jones aff., ¶ 11; Ex. C, Torbert aff., ¶ 10; Ex. D, Welch aff., ¶ 10; Ex. E, Tabb aff., ¶ 10.) The Lee County Detention Facility records show that the Plaintiff was visited by his mother on March 11, 2006. (Ex. C, Torbert aff., ¶ 10.)

It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Facility are provided with a nutritionally adequate diet. (Ex. B, Jones aff., ¶ 31; Ex. C, Torbert aff., ¶ 31; Ex. D, Welch aff., ¶ 30; Ex. E, Tabb aff., ¶ 30.) Inmates are served three meals each day at regularly scheduled times. At least two of these meals are hot, and there are no more than 14 hours between the evening meal and breakfast. (Ex. B, Jones aff., ¶ 32; Ex. C, Torbert aff., ¶ 32; Ex. D, Welch aff., ¶ 31; Ex. E, Tabb aff., ¶ 31.) All meals are served at the appropriate temperature as soon as possible after they are prepared. (Ex. B, Jones aff., ¶ 33; Ex. C, Torbert aff., ¶ 33; Ex. D, Welch aff., ¶ 32; Ex. E, Tabb aff., ¶ 32.) Consideration is given to texture, color, flavor and appearance in food preparation. (Ex. B, Jones aff., ¶ 34; Ex. C, Torbert aff., ¶ 34; Ex. D, Welch aff., ¶ 33; Ex. E, Tabb aff., ¶ 33.) The Lee County Detention Facility menus are reviewed regularly by a registered dietician to ensure that inmates are provided with a nutritionally adequate diet. (Ex. B, Jones aff., ¶ 35; Ex. C, Torbert aff., ¶ 35; Ex. D, Welch aff., ¶ 34; Ex. E, Tabb aff., ¶ 34.) A copy of the menus for the Lee County Detention Facility from January through March 2006 is attached hereto as Exhibit K.

In the event that the number of inmates exceeds the number of beds in the Lee County Detention Facility, the inmates will be provided with either a portable bed or a mattress and blankets. Inmates are never required to sleep on the floor without a mattress. (Ex. B, Jones aff., ¶ 36; Ex. C, Torbert aff., ¶ 36; Ex. D, Welch aff., ¶ 35; Ex. E, Tabb aff., ¶ 35.)

When an inmate fills out an order for merchandise from the Detention Facility Commissary, that inmate signs a clause stating that if he is released prior to the order being delivered, he has 72 hours to return to the Detention Facility and pick up his order or he forfeits that order. If an inmate who has ordered from the commissary signs a request slip designating to who the store order is to be given after his release and personally gives the request slip to Sergeant Tabb, Sergeant Tabb will honor that request as a courtesy. If an inmate's store order is forfeited, Sergeant Tabb gives that order to an indigent inmate. (Ex. B, Jones aff., ¶ 37; Ex. C, Torbert aff., ¶ 37; Ex. D, Welch aff., ¶ 36; Ex. E, Tabb aff., ¶ 36.) Sergeant Tabb has reviewed the records of store orders, and there is no record of Kenith Brown ever placing a store order. Had Kenith Brown ever placed a store order, Sergeant Tabb would have a record of that order. Because Kenith Brown had never placed a store order, he did not have any order to give to the Plaintiff. (Ex. E, Tabb aff., ¶ 37.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official

capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence, Ala.</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  <u>Id.</u>; <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

### B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

### 1.    Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.

First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff did not even file a grievance regarding any of the allegations made the basis of his Complaint except the issue regarding his eyes.  The Plaintiff has not

utilized the appeals process at the Lee County Detention Facility because he has failed to appeal **any** grievance to Major Torbert or Sheriff Jones.  Therefore, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Facility.  See Booth v. Churner, 532 U.S. 731, 734-35, 741 (2001) (affirming dismissal based on failure to exhaust administrative remedies where the inmate filed an administrative grievance but did not seek intermediate or final administrative review after the grievance was denied.); see also Washington v. Michael, 127 Fed. Appx. 132, 133 (5th Cir. 2005) (affirming district court's dismissal of inmate's complaint for failure to exhaust administrative remedies because the inmate did not appeal the denial of his initial administrative remedy attempts); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (recognizing that the mandatory exhaustion requirement includes the requirement that an inmate follow the prison's rules for filing an appeal); Hutton v. Wilkinson, 34 Fed. Appx. 463, 465 (6th Cir. 2002); Hutton v. Wilkinson, 34 Fed. Appx. 463, 465 (6th Cir. 2002) (holding that the inmate's allegations for which he filed grievances but did not appeal were not exhausted and were properly dismissed).  In Butler v. Gardner the Sixth Circuit explained the mandatory nature of complying with the formal grievance process and appealing the grievances to the highest authority:

> The district court properly dismissed Butler's complaint.  Prisoners deciding to bring civil rights claims must exhaust all available administrative remedies.  The prisoner bears the burden of establishing the exhaustion of administrative remedies.  To establish exhaustion, the prisoner must allege that all available administrative remedies have been exhausted and he should attach documentation to the complaint indicating the administrative disposition of any grievances that he filed. *Id.*  When a prisoner has filed a civil rights complaint without exhausting his administrative remedies, dismissal of the complaint is appropriate.
>
> Although Butler refers to his medical requests for treatment, his complaint fails to set forth any allegations that Butler submitted his complaints to the prison's formal grievance process and that any grievances were appealed to the highest authority.  As Butler has failed to establish that he has exhausted his available administrative remedies, the district court properly dismissed the complaint for failure to comply with § 1997e.

21 Fed. Appx. 287 (6th Cir. 2001).

Second, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Lee County is a state officer, as are his alter egos, and therefore, they would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former § 1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth, 532 U.S. at 741   (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not alleged a physical injury that is greater than de minimis, his Complaint is due to be dismissed.

**C.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U. S. Supreme

16

Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations

omitted).

    **1.      The Plaintiff's Constitutional Rights were not violated.**

        **a.     <u>Access to Courts Claim</u>**

The Plaintiff has not alleged any facts sufficient to maintain a claim that he suffered a

constitutional deprivation due to any alleged denial of access to courts, based on any alleged

deficiencies at the Lee County Jail.

> "[T]he fundamental constitutional right of access to the courts requires prison
> authorities to . . . provid[e] prisoners with adequate law libraries or adequate
> assistance from persons trained in the law." The Supreme Court, however, has
> clarified that prisoners' contentions of deprivations of access to courts must show
> actual injury as a "constitutional prerequisite." While *Bounds* guarantees the right
> of access to the courts under the Fourteenth Amendment, prisoners have no
> inherent or independent right of access to a law library or to legal assistance.
> Instead, they must show actual injury in the pursuit of specific types of
> nonfrivolous cases: direct or collateral attacks on sentences and challenges to
> conditions of confinement. "Impairment of any *other* litigating capacity is simply
> one of the incidental (and perfectly constitutional) consequences of conviction
> and incarceration."

Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (internal citations omitted).

In <u>Lewis v. Casey</u>, the United States Supreme Court made it clear that, in order to prevail

on a claim that an inmate's right to access to courts has been violated, the inmate must establish

prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance

program [or other alternative provided] hindered his efforts to pursue a legal claim." <u>Lewis v.

Casey</u>, 116 S. Ct. 2174 (1996). To establish such prejudice, an inmate must "show, for example,

that a complaint he prepared was dismissed for failure to satisfy some technical requirement

which, because of deficiencies in the prison's legal assistance facilities, he could not have

known, or that he suffered arguably, actionable harm that he wished to bring before the courts,

but was so stymied by inadequacy of the law library that he was unable to even file a

Complaint." <u>Id.</u>  The Plaintiff has failed to allege that he was, in any way, prejudiced, in any manner whatsoever, in any court where he has had criminal or civil matters pending.  It is clear that, in the instant civil matter, Plaintiff was able to file his Complaint as well as a subsequent document with this Court.

Furthermore, the evidence shows that the Lee County Sheriff's Office allows inmates to have access to the courts, attorneys, and their authorized representatives as well as the law library.  In fact, the Plaintiff was given access to the law library upon his request.  Inmates are entitled to privileged visits at any reasonable time with their attorneys or other legal official.  Inmates are to be given access to the telephones in the dayroom each day from 7:00 a.m. until 9:00 p.m.  Telephone privileges are also extended to persons not incarcerated in the dayroom area of the Detention Facility on a regular basis, at least four hours per day between 7:00 a.m. and 9:00 p.m.

The Defendants in this action have neither duty nor authority with regard to when an inmate goes to Court.  The Lee County Sheriff's Office is responsible for submitting the inmate's arrest report to the Court, which was done in this case.  The judge assigned to that inmate's case sets that inmate's Court date, and the Lee County Sheriff's Office employees simply ensure that the inmate is present at the ordered time.  At all times, the Plaintiff has been transported to his scheduled court appearances.

In conclusion, the evidence shows that the Plaintiff was not, in fact, denied access to courts, and even so, the Plaintiff has failed to allege a required element of an access to courts claim – that he was prejudiced by such denial.  Accordingly, Plaintiff's access to courts claim must fail.

**b.    <u>Conditions of Confinement Claim</u>**

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering

[constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290. In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme* deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment.[13] Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons." Chandler, 379 F.3d. at 1289. In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

It is clear that the conditions alleged in the Plaintiff's Complaint - that his request forms were not timely answered, that Sergeant Tabb did not give him a former inmate's store order, that he was denied visitation, that the menu is inadequate, and that there are more inmates than there are beds - were not "extreme" as to rise to the level of a constitutional violation. First, the

---

[13] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial . . . detainees.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

evidence is clear that the Plaintiff's requests were answered.  However, an allegation that the Defendants did not follow procedure in responding to request forms does not implicate a constitutional right.  See, e.g., Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (holding that "a state's failure to follow its grievance procedures does not give rise to a § 1983 claim").  As to the allegation regarding the Plaintiff's not receiving the former inmate's store order, it is obvious that no constitutional right is implicated by not being given access to the commissary, especially where the commissary purchase did not even belong to him.  See, e.g., Stewart v. McGinnis, 800 F. Supp. 604, 619 (N.D. Ill. 1992) (holding that an inmate has "no constitutionally protected right to commissary access"); Acree v. Peterson, 2000 WL 1141587, *7 (D. Or. 2000) (holding that an inmate "has no protected property interest to purchase commissary items").  Even so, the evidence shows that Kenith Brown had never placed a store order, and thus he did not have any order to give to the Plaintiff.  Sergeant Tabb had no duty or authority to give any store order to the Plaintiff.  As to Plaintiff's claims regarding visitation and food, it is clear from the evidence that the Plaintiff was given more than "reasonable" visitation and more than "reasonably adequate" food.  See, e.g., Jones v. Diamond, 594 F.2d 997, 1014 (5th Cir. 1979) ("The Constitution requires only that prisoners be furnished reasonably adequate food."); Jones v. Diamond, 594 F.2d 997, 1013 (5th Cir. 1979) (holding that pretrial detainees have a right to reasonable visitation).

Finally, the Plaintiff's claim that there are more inmates than there are beds does not violate his constitutional rights.  The evidence is clear that, in the event that the number of inmates exceeds the number of beds in the Lee County Detention Facility, the inmates will be provided with either a portable bed or a mattress and blankets.  Inmates are never required to sleep on the floor without a mattress.  These conditions do not rise to the level of a constitutional violation.  See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that an inmate's

temporarily sleeping on a mattress on a floor or table is not necessarily a constitutional violation); Datz v. Hutson, 806 F. Supp. 982, 988-89 (N.D. Ga. 1992) (holding that even assuming that the plaintiff had to sleep on a mattress on the floor, such treatment is not cruel or unusual as to form a constitutional violation).  Further, the Plaintiff does not even sufficiently allege that he personally was actually required to sleep on a portable bed or mattress.

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).  "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986).  There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions.  Id. at 837-839.  No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

21

In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not sufficiently alleged that any of the Defendants knew of or disregarded that risk. There are no request slips in the Plaintiff's file regarding his allegations of the conditions of his confinement. The Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions. Further, it is clear that Nurse Stewart and Nurse Griffith have neither duty nor authority with regard to the nonmedical jail conditions, as they are responsible for medical care only. Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, *supra*, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (U.S. 2002); see also Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimis imposition that did not amount to a constitutional violation). The Plaintiff has not alleged that he suffered any injury as a result of the alleged conditions of his confinement. Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

### c.    Medical Claim

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment[14] violation only if

---

[14] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

those needs are "serious." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

<u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted) (modification in original).  A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  <u>Farmer</u>, 511 U.S. at 845-47.  Mere negligence does not suffice to prove deliberate indifference.  <u>Farmer</u>, 511 U.S. at 835 ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

No deliberate indifference was shown in the instant case.  The evidence shows that the Plaintiff was seen and treated by a Nurse and medical doctor and was given medication for his headaches.  Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11th Cir. 1985).  An inmate does not have a right to a ***specific*** kind of treatment.  <u>City of Revere v. Mass. Gen'l Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  <u>See Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has

received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Hamm v. DeKalb County, 774 F.2d 1567, 1574-75 (11th Cir. 1985) ("This evidence shows that Hamm received significant medical care while at the jail. Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

In Faison v. Rosado, the inmate complained that the jail doctor did not refer him to a physical therapist even though the orthopedic specialist had recommended it. 129 Fed. Appx. 490, 492 (11th Cir. 2003). The doctor responded that the orthopedist's comment was just that the plaintiff should see a physical therapist if one was available. The Court held that, "although Faison might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim." Id.; see also Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995) (question of medical judgment cannot make out a basis for imposing liability under § 1983). The Court further stated: "Even if physical therapy was a part of a more aggressive treatment plan, Dr. Monserrate's failure to refer Faison to a physical therapist may amount to negligence but not to a cognizable constitutional claim." Just as in Faison, in the case at bar, the Plaintiff's disagreement with the method of treatment does not rise to a § 1983 claim.

The Plaintiff's claim that the Lee County Detention Facility will not purchase glasses for him fails to state a claim. See Nicholson v. Choctaw County, Ala., 498 F. Supp. 295, 308 (S.D.

Ala. 1980) (holding that the county jail was "under no duty to provide prosthetic devices such as eyeglasses or dentures, or to provide routine diagnostic care for inmates.").

The evidence shows that all inmates sentenced to over 90 days are given a screening for Tuberculosis which is clearly not deliberately indifferent.  See, e.g. Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001) (holding jail's policy which required "testing of only those individuals who show symptoms of active tuberculosis or those who have come into contact with an infected individual [did] not amount to objective deliberate indifference to the medical needs of pretrial detainees.")

Plaintiff's complaint that he is charged a co-pay for medical services fails to state a constitutional claim.  See, e.g., Oliver v. Matthews, 2005 WL 1270949, *8 (M.D. Ala. 2005) ("The mere fact that Plaintiff was assessed a $10.00 co-payment for medical treatment does not in any way deprive him of a protected right, privilege or immunity."); Bester v. Wilson, 2000 WL 1367984, *8 (S.D. Ala. 2000). ("[T]he charging of a fee to prisoners for medical treatment from their funds has been held to be constitutional when challenged on several due process and Eighth Amendment grounds.").  The Defendants have testified that an inmate will not be denied medical care because of lack of funds from which to pay the co-pay.  Therefore, the Plaintiff's claim regarding the required co-pay is without merit.

Furthermore, Sheriff Jones, Major Torbert, Lieutenant Welch, and Sergeant Tabb do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[15] for failing to

---

[15] The medical director was a trained and licensed nurse.  302 F.3d at 846.

provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at

847. Reversing the district court's denial of summary judgment for the director, the Eighth

Circuit began by making some common sense observations. "A prison's medical treatment

director who lacks medical expertise cannot be liable for the medical staff's diagnostic

decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical

professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir.

2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to
> second-guess or disregard a treating physician's treatment decision. Because the
> law was not clearly established that [the director] was deliberately indifferent to
> [the plaintiff's] serious medical needs, [the director] is entitled to qualified
> immunity.

302 F.3d at 849; see also Brownell v. Figel, 950 F.2d 1285, 1291-92 (3d Cir. 1991) (granting

summary judgment to police officer after *rejecting* plaintiff's contention that "the due process

clause requires police to second guess a doctor's diagnosis in all instances where intoxicated

accident victims display aberrant behavior."); Rowe v. Rivera, 2000 WL 1507447, *6 (D.N.H.

2002) ("The defendants' reliance on the opinions of the doctors who examined Rowe after Dr.

Hogan recommended surgery and who believed that his condition was not urgent does not

constitute deliberate indifference to a substantial risk to Rowe's health."); Rosas v. Lane, 1987

WL 15762, *2 (N.D. Ill. 1987) ("Loathe to second-guess the judgment of medical health care

professionals, courts rarely find violations of the Eighth Amendment in disputes between

inmates and medical staff as to the appropriateness of a diagnosis or the adequacy of treatment

actually rendered."); Ellison v. Scheipe, 570 F. Supp. 1361, 1363-64 (E.D. Pa. 1983) ("[P]rison

officials cannot be required to second guess the medical judgment of the physician."). This

Court reached a similar conclusion in Shepard v. Stidham, 502 F. Supp. 1275 (M.D. Ala. 1980).

In Shepard, the Court held that the prison officials acted reasonably in reliance on the recommendation of the physician, and therefore no deliberate indifference was shown.  Id. at 1281-1282.

In the instant case, the evidence shows that Plaintiff was treated by a Jail Nurse and the Jail Medical doctor for all his medical problems.  Sheriff Jones, Major Torbert, Lieutenant Welch, and Sergeant Tabb, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors.  Furthermore, Nurse Stewart and Nurse Griffith, like the director in Meloy and like the prison officials in Shepard, cannot, and should not, second guess the judgment of Dr. McFarland, a licensed and trained medical doctor.  See Fillebrown v. Zettlemoyer, 1996 WL 460051, at *3 (E.D. Pa. 1996) ("[P]rison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician.  Since [the] defendants were entitled to rely upon the recommendations of the treating physician, their conduct did not amount to deliberate indifference.").  The evidence shows that the Plaintiff has been seen by Dr. McFarland and that Dr. McFarland's sound medical orders are followed at all times.  Therefore, Defendants in no way violated the Plaintiff's constitutional rights.

## 2.    No clearly established law provided the defendants with fair warning that their conduct was unlawful.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003)

(citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In Wilson v. Jones, the Eleventh Circuit held that, where two district courts within the Eleventh Circuit had upheld the Sheriff's policy of blanket strip searches, there was no fair warning that this policy was unlawful for purposes of qualified immunity.  251 F.3d 1340, 1345-46 (11th Cir. 2001).  Similarly, in the instant case, the Southern District of Alabama has held that a county jail has no duty to provide eyeglasses to an inmate.  Accordingly, just as in Wilson, because a district court in this Circuit has upheld actions identical to those of the Defendants in this case, the Defendants are similarly entitled to qualified immunity.

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful in any of the areas of which the Plaintiff complains.  Therefore, Defendants are entitled to qualified immunity.

### D.    Plaintiff has failed to allege sufficient personal involvement on each claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in

constitutional injury. <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege sufficient allegations demonstrating that the Defendants were in any way involved in the actions he claims were constitutionally infirm. There are insufficient facts to show that these Defendants personally participated in these claims, and the Plaintiff has failed to sufficient allege specifically how these Defendants violated his constitutional rights with regard to his claims. As to the claims regarding his not going to court for two months, the Plaintiff has not alleged that any of the Defendants' actions caused this delay. In fact, the only Defendant he mentions in connection with this claim is Major Torbert, and the only allegation he made concerning Major Torbert is that he a request to Major Torbert about this allegation. However, the Plaintiff does not allege that Major Torbert had any control over his court appearances, and in fact, Major Torbert did not have any control over when the Plaintiff went to Court. As to the Plaintiff's claim regarding his requests not being answered, the only Defendants he mentioned are Sheriff Jones, Major Torbert, and Sergeant Tabb. However, the evidence is clear that the requests that the Plaintiff submitted were answered. As to the Plaintiff's claims regarding wanting the Lee County Detention Facility to purchase eyeglasses for him, the only Defendants mentioned are Nurse Stewart and Nurse Griffith. As to the store order claim, the only Defendant mentioned is Sergeant Tabb. As to the allegations regarding visitation, the T.B. test issue, inmate meals, overcrowding, and having to pay a medical co-pay, the Plaintiff has failed allege how any of the Defendants were personally involved in any alleged constitutional violation. Nurse Stewart and Nurse Griffith have neither duty nor authority with regard to the nonmedical claims. There are no allegations showing what Lieutenant Welch did to violate the Plaintiff's rights. Because of the lack of allegations of personal involvement on each claim, the Plaintiff's claims are due to be dismissed.

The lack of factual allegations against the Defendants makes it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*. To the extent that

Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269.  The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants.  As such, Plaintiff's conditions of confinement claims are due to be dismissed.

### E.    The injunctive relief requested by the Plaintiff is due to be denied.

Defendants first note that they lack the authority to release the Plaintiff from jail because the Plaintiff is serving a sentence imposed by a state court.  Further, Plaintiff's request for this type of relief is barred by the dictates set forth in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); see Uboh v. Reno, 141 F.3d 1000, 1006 (11th Cir. 1998) (explaining that "a civil proceeding challenging the grounds on which the prosecution against Uboh had been commenced *indirectly* would implicate the question of Uboh's guilt; this type of parallel inquiry by way of a civil suit prior to the resolution of a criminal action based on the same set of events is precisely the quandary that Heck prohibits") (emphasis added).

Finally, such a claim for relief is barred by absolute quasi-judicial immunity.  "Absolute quasi-judicial immunity derives from absolute judicial immunity.  Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the 'clear absence of all jurisdiction.'  Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'"  Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) (internal citations omitted).  The Eleventh Circuit in Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) has recognized that law enforcement personnel in executing a facially valid court order are entitled to absolute quasi-judicial immunity from suit in § 1983 actions.  In holding that the sheriff and deputy sheriff were entitled to absolute quasi-judicial immunity, the court stated that other circuits have held that law enforcement officers executing facially valid court orders are protected by such immunity.  19 F.3d at 555.  The Court further stated:  "Law enforcement officers must not 'be called upon to answer for the legality of decisions which they are powerless to control' or 'be required to act as pseudo-appellate courts scrutinizing the orders of judges.'"  Roland 19 F. 3d at 556.  In the instant case, the Plaintiff is incarcerated pursuant to a facially valid order from a court of competent jurisdiction, and therefore the Defendants' actions come within the protections of quasi-judicial immunity.

For all these reasons, the Plaintiffs request to be released from jail is due to be denied.

**F.    Plaintiff lacks standing to assert the claims regarding overcrowding, regarding Kenith Brown's store order, and regarding the T.B. skin test policy.**

The Plaintiff has failed to allege an injury in fact as required to meeting the Article III standing requirements with regard to the allegation that there are not enough beds for the inmate and with regard to his claim about Kenith Brown's store order.  See Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471-72 (1982)

(holding that a plaintiff must "show that he ***personally*** has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" in order to satisfy Article III standing requirements) (emphasis added).  There is no allegation that the Plaintiff himself had to sleep on the floor, and therefore the Plaintiff lacks standing to bring suit regarding such a claim. The Plaintiff has no interest in Kenith Brown's store order, and therefore he lacks standing to bring suit on behalf of something that allegedly belonged to Kenith Brown.  The Plaintiff has not shown how he has been or will be injured by his allegation regarding the T.B. skin test.  Because he has failed to allege a personal injury in fact with regard to these claims, they are due to be dismissed.

### G.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[16]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions,

---

[16] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

periphrastic circumlocutions, and the like need not be credited.'" <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting <u>Mass. School of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Jeffery B. Jones, in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 19th day of June, 2006.

> **s/Amanda Kay Morgan**
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  amorgan@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 19th day of June, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Jeffery B. Jones
> Lee County Detention Facility
> P.O. Box 3508
> Opelika, AL  36801

> **s/Amanda Kay Morgan**
> OF COUNSEL